**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**RAYQUAN PETTAWAY,**

                    **Plaintiff,**

      **v.**                                                   **CASE NO. 22-3022-SAC**

**D. HUDSON, et al.,**

                      **Defendants.**

**MEMORANDUM AND ORDER**

**I.   Nature of the Matter before the Court**

Plaintiff RayQuan Pettaway, who is incarcerated at USP Leavenworth (USPL) in Leavenworth, Kansas, has filed this pro se civil action pursuant to 28 U.S.C. § 1331, seeking relief from federal officials for the alleged violations of his constitutional rights. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971).

As the factual background for this complaint, Mr. Pettaway alleges that he was housed in a cell that had urine and feces in it and his requests for cleaning supplies were denied. Showers, when he is allowed to take them, are cold and the water is muddy. He was locked down longer than 14 days for quarantine and was housed with detainees of different custody levels. He further alleges that his legal mail has been read outside his presence, he has been denied grievance forms, and he was physically assaulted by a corrections officer. (Doc. 1, p. 2.)

1

As Count I of his complaint, Plaintiff claims that his "right of sanitation" was violated. *Id.* at 3. As supporting facts for this claim, he specifically alleges that he was locked in a cell for three days that had urine and feces in it and although he asked Corrections Officer Escobar for cleaning supplies, she repeatedly denied his requests. *Id.* Plaintiff asserts that he was sick for a week. *Id.*

As Count II, Plaintiff claims that his right to shower multiple times a week and his right to be fed properly were violated. *Id.* As supporting facts for this claim, he specifically alleges that he was fed raw meat that left him with stomach pain for 3 days and he was not allowed to shower for a week. *Id.*

As Count III, Plaintiff claims that Corrections Officer Early assaulted him and used excessive force. *Id.* at 3-4. As supporting facts for this claim, he specifically alleges that on January 11, 2022, between 3 and 4 p.m., he was in A1 pod when Early told him to go into his cell. *Id.* at 4; (Doc. 4, p. 1). Because the cell door was closed, Plaintiff stood in front of his cell waiting for the door to pen. (Doc. 4, p. 1.) Early pushed Plaintiff, trying to force him through the closed cell door and, when Plaintiff told Early to stop and asked how he was supposed to go through a closed door, Early grabbed Plaintiff by his neck and slammed him to the ground. Early put his foot on Plaintiff's head, pressing his face into the cement floor, then put his knee on Plaintiff's upper back. *Id.*

Plaintiff told Early that he could not breathe, but Early said he did not care; Early remained with his knee in Plaintiff's back for 2 to 3 minutes. *Id.* Early also took Plaintiff's MP3 player from Plaintiff's hand and threw it on the floor. *Id.* Plaintiff was then taken and processed into the hole. *Id.* He asserts that he fears for his life and safety and, on January 21, 2022, he was returned to A1 pod, where Early works. *Id.* Plaintiff asked Early about his MP3 player and Early directed him to Lieutenant C. Lamont, but Lamont told Plaintiff he had not seen the MP3 player. *Id.* at 1, 3.

Plaintiff has heard rumors that Early and other corrections officers are discussing how Early "slammed [Plaintiff] on [his] face," bragging about assaulting him, and telling inmates of plans to "hav[e Plaintiff] checked out of the pod by force." *Id.* at 3. As a result, Plaintiff continues to fear for his safety. *Id.* at 3.

Also in Count III of his complaint, Plaintiff claims that he was denied medical treatment. (Doc. 1, p. 3-4.) As supporting facts for this claim, he specifically alleges that he has sickle cell anemia. (Doc. 4, p. 2.) On February 1, 2022 at 6:30 p.m., he had a sickle cell attack and fell out of the top bunk in his cell. *Id.* His cellmate called for emergency assistance, but it took 30 minutes for Corrections Officer Escobar to respond and call for medical help. *Id.* It was another 45 minutes before medical help arrived and when Plaintiff said he was having a sickle cell attack and his neck

and back hurt from the fall, he was told that if he could feel his hands and feet, that meant no bones were broken. *Id.*

Plaintiff asserts that he was left on the cold floor in pain for an hour before someone brought him Tylenol and told him he would be fine. Plaintiff's cellmate helped him to his feet and back into bed because prison staff and medical personnel left him on the floor. *Id.* Plaintiff put in grievances regarding the events but received no relief; similarly, Warden D. Hudson told Plaintiff there was nothing he could do to help. *Id.*

As relief, Plaintiff requests money damages of $100,000 to $500,000. (Doc. 1, p. 5.)

## II. Screening Standards

Because Mr. Pettaway is a prisoner, the Court is required to screen the complaint and dismiss any portion that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from that relief. *See* 28 U.S.C. §§ 1915A(a)-(b). Plaintiff proceeds pro se, so the Court liberally construes the complaint and applies less stringent standards than it would to formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). During this initial screening, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006.)

Nevertheless, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570. "[T]o state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed (the plaintiff); and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007).

The Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Id.* (quotation marks and citations omitted). Under this new standard, "a plaintiff must nudge his claims across the line from conceivable to plausible." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

**III. Improper Defendants and the Personal Participation Requirement**

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). As a result, a plaintiff must name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated the plaintiff's

6

federal constitutional rights. *See Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007) (finding direct, personal participation of individual defendants is required to establish *Bivens* liability).

In the caption of the complaint, Plaintiff identifies the following two defendants: Warden Hudson and Corrections Officer Early. (Doc. 1, p. 1.) Yet Plaintiff bases Count I, in part, on Officer Escobar's actions. Officer Escobar is not a defendant to this action and, as such, her actions may not form the basis for a claim for relief. If Plaintiff wishes to seek relief based on Escobar's action or inaction, he must name her as a defendant in the caption of the complaint and allege specific facts in the body of the complaint to show her personal participation in the violation of Plaintiff's federal constitutional rights.

Similarly, the complaint contains insufficient allegations to state a claim against Warden Hudson. The allegation that an official denied a grievance or failed to respond to a grievance is not sufficient to show personal participation. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (A "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by [the] plaintiff, does not establish personal participation under § 1983."); *Staples v. United States*, 2019 WL 1014728, *2 (D. Kan. Mar. 3, 2019) ("A prison

7

official whose activity is limited to processing or denying a grievance cannot be held liable [in a *Bivens* action] on that basis."). Thus, this action is subject to dismissal as against defendant Hudson because the complaint fails to allege facts showing his personal participation in the alleged constitutional violations.

**IV. Failure to State a Claim upon which Relief may be Granted**

"*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980).

This action is subject to dismissal because Plaintiff has not adequately alleged a federal constitutional violation. Plaintiff does not identify in the complaint the federal constitutional provisions he believes were violated. He may have simply failed to specify the constitutional provision, but the Court is not free to construct a legal theory on a plaintiff's behalf. In any event, even liberally construing the complaint to allege constitutional violations, the complaint is largely subject to dismissal for failure to allege sufficient facts to support a claim for relief.

### Count I

Count I alleges that Plaintiff was kept in a cell with feces and urine for three days and his requests for cleaning supplies were denied. (Doc. 1, p. 3.) Liberally construed, Count I alleges

a violation of the Eighth Amendment's requirement that prison officials provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "Under the Eighth Amendment, [prison] officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001).

In order to state a claim for unconstitutional conditions of confinement, a plaintiff must show that the defendant was personally responsible for the conditions under which he or she was held. The complaint in this matter does not allege that any of the named defendants were involved in Plaintiff's placement in the cell, denied Plaintiff's requests for cleaning supplies, or otherwise participated in the facts underlying Count I. Accordingly, Count I is subject to dismissal for failure to state a claim upon which relief may be granted.

### Count II

Count II is based upon Plaintiff's claim that he was fed raw meat and denied the opportunity to shower; like Count I, this appears to be a conditions-of-confinement claim. (Doc. 1, p. 3.) As with Count I, however, Plaintiff does not identify any action or inaction by any named defendant—or any other named individual—

9

related to the alleged facts that make up the basis for this count. Accordingly, Count II is also subject to dismissal for failure to state a claim upon which relief may be granted.

### Count III

Count III is based upon the alleged excessive force by Early, the delay and denial of medical care after Plaintiff's fall from his bunk, and the loss of Plaintiff's MP3 player. (Doc. 1, p. 4; Doc. 4, p. 1, 3.) Liberally construed, Count III alleges the violation of the Eighth Amendment right to be free from cruel and unusual punishment based on excessive force (the assault by Early) and violation of the Eighth Amendment right to be free from cruel and unusual punishment based on inadequate provision of medical care (the events after Plaintiff fell from his bunk). It is unclear what, if any, constitutional violation Plaintiff alleges with respect to the loss of his MP3 player.

Plaintiff's delay or denial of medical care claim is subject to dismissal for failure to state a claim upon which relief may be granted. As in Counts I and II, Plaintiff fails to allege facts that show sufficient personal participation by any named defendant. In addition, the United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Boyett v. County of Washington*, 282 Fed. Appx. 667, 672 (10th Cir.

2008)(citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)). The "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

For the objective component, the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez*, 430 F.3d at 1304. In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305.

Furthermore, in situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay.

*Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001); *Kikumura v. Osagie*, 461 F.3d 1269, 1292 (10th Cir. 2006).

In the current complaint, Plaintiff asserts that it took 30 minutes for a response to his cellmate's cries for help, then another 45 minutes for medical care. (Doc. 4, p. 2.) He disagrees with the way that he was medically treated, the delay in getting him Tylenol, and staff leaving him on the cell floor. Plaintiff does not allege deliberate indifference by any named defendant, nor does he identify what medical treatment he feels he should have received or what substantial harm he suffered as a result of the delay in treatment. Thus, the claim based on the events after Plaintiff fell from his bunk is subject to dismissal for failure to state a claim upon which relief may be granted.

## V.   Joinder of Claims and Parties

The Federal Rules of Civil Procedure apply to suits brought by prisoners. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Pro se litigants must "follow the same rules of procedure that govern other litigants." *Kay*, 500 F.3d at 1218; *McNeil v. United States*, 508 U.S. 106, 113 (1993)(federal rules apply to all litigants, including prisoners lacking access to counsel).

Federal Rule of Civil Procedure 20(a)(2) governs permissive joinder of defendants and pertinently provides:

> (2) Defendants. Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction,

> occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party." Although joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001)(citation omitted). The Court of Appeals for the Seventh Circuit held in *George* that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." 507 F.3d at 607 (Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.").

Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." *Id.* It also prevents prisoners from "dodging" the fee obligations and the three strikes provisions[1] of the Prison Litigation Reform Act. *Id.*

---

[1] 28 U.S.C. § 1915(g) provides: In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent

13

(Rule 18(a) ensures "that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

In sum, under Rule 18(a), Plaintiff may bring multiple claims against a single defendant. Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact. He may not bring multiple claims against multiple defendants unless the prescribed nexus in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

The Federal Rules authorize the Court, on its own initiative at any stage of the litigation, to drop any party and sever any claim. Fed. R. Civ. P. 21; *Nasious v. City & Cnty. of Denver Sheriff's Dept.*, 415 Fed. Appx. 877, 881 (10th Cir. 2011) (to remedy misjoinder, the court has two options: (1) misjoined parties may be dropped or (2) any claims against misjoined parties may be severed and proceeded with separately).

Some or all of the claims in the complaint are subject to dismissal because Plaintiff appears to have improperly joined parties and/or unrelated claims in this action. It is not clear from the complaint that Plaintiff's multiple claims involve all named defendants or that his claims against all defendants arise

---

danger of serious physical injury.

from the same transaction or occurrence and involve common questions of law or fact. Thus, it is not clear that his joinder of all named defendants and all asserted claims into this single complaint is proper.

The complaint violates FRCP Rule 20(a)(2) because it names multiple defendants not shown to be connected to all claims raised in the complaint by a common occurrence or question of fact or law. It violates FRCP Rule 18(a) because it contains claims not related to other claims against different defendants. To permit Plaintiff to proceed in this single action on unrelated claims against different defendants that should be litigated in a separate action or actions would allow him to avoid paying the filing fees required for separate actions. It might also allow him to circumvent the three strikes provision set forth in 28 U.S.C. § 1915(g).

Therefore, Plaintiff is required to file an Amended Complaint stating only those claims he has against a single defendant or, if he again names multiple defendants, stating only those claims arising from the same transaction or occurrence and having common questions of fact or law. Plaintiff must decide which properly-joined defendants and claims to include in his Amended Complaint. Any claims or defendants that cannot be properly joined in his Amended Complaint are not lost, but may be raised or named in separate complaints submitted for filing as new actions.

**VI.   Amended Complaint Required**

For the reasons stated herein, the current complaint is deficient. Plaintiff is therefore given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein. Plaintiff is given time to file a complete and proper amended complaint in which he (1) raises only properly joined claims and defendants; (2) identifies each defendant in both the caption of the complaint and the body of the complaint; (3) alleges sufficient facts to state a claim of federal constitutional violation; and (4) alleges sufficient facts to show personal participation by each named defendant.

Plaintiff is cautioned that an amended complaint is not simply a supplement to the original complaint, and instead completely replaces it. Any claims or allegations not included in the amended complaint are no longer before the Court. Plaintiff may not simply refer to an early pleading; the amended complaint must contain all allegations and claims that Plaintiff intends to pursue in this action, including those already set forth in the original complaint. Plaintiff must write the number of this case (22-3022) at the top of the first page of his amended complaint. He must name every defendant in the caption and he should refer to each defendant again in the body of the complaint, where he must allege facts describing the unconstitutional acts taken by each defendant, including dates,

locations, and circumstances. Plaintiff must allege sufficient facts to show a federal constitutional violation.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will proceed upon the current deficient complaint.

**IT IS THEREFORE ORDERED** that Plaintiff is granted to and including April 1, 2022, to file a complete and proper amended complaint to cure all the deficiencies discussed herein. The clerk is directed to send the appropriate forms and instructions to Plaintiff.

**IT IS SO ORDERED.**

DATED: This 1st day of March, 2022, at Topeka, Kansas.

S/ Sam A. Crow

SAM A. CROW
U.S. Senior District Judge